IPLS
Saussee Moghoyan (CA Bar No. 289764)
soseh@ipls.us
466 Foothill Blvd, #79
La Canada Flintridge, CA 91101
Telephone:  (818) 445-3730

*Attorney for Plaintiff*
*Marilyn Rondon*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARILYN RONDON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>BOARDRIDERS, INC., a California corporation; CR WOOSTER STREET CORPORATION, d/b/a CYNTHIA ROWLEY, a New York corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE  NO.   8:22-cv-02071<br><br>COMPLAINT FOR:<br><br>1)  COPYRIGHT INFRINGEMENT;<br>2)  CONTRIBUTORY COPYRIGHT INFRINGEMENT;<br>3)  VICARIOUS COPYRIGHT INFRINGEMENT;<br>4)  VIOLATION OF CALIFORNIA CIVIL CODE SECTION 980, *et seq*.; and<br>5)  VIOLATION OF CALIFORNIA BUSINESS<br>     AND PROFESSIONS CODE SECTION 17200. |

Plaintiff Marilyn Rondon ("Plaintiff") complains of defendants Boardriders, Inc. ("Boardriders") and CR Wooster Street Corporation, d/b/a Cynthia Rowley ("Rowley" and, together with Boardriders and the Doe Defendants defined below, the "Defendants") and alleges as follows:

## NATURE OF THIS ACTION

1.      This is a civil action seeking damages for copyright infringement and related claims in connection with Defendants' infringement of Plaintiff's copyrights.

## PARTIES

2.      Plaintiff Marilyn Rondon is, and at all relevant times was, an individual residing in Los Angeles County, California.

3.      Defendant Boardriders is, and at all relevant times was, a clothing, swimwear and apparel company with its principal place of business located at:  5600 Argosy Circle, Building 100, Huntington Beach, California 92649.

4.      Defendant CR Wooster Street Corporation, d/b/a Cynthia Rowley is, and at all relevant times was, a clothing, swimwear and apparel company with multiple boutique locations in California and a principal place of business located at: 8 Jay Street, New York, New York, 10013.

5.      The true names and capacities, whether individual, corporate, associate or otherwise, of Doe Defendants 1 through 10 ("Doe Defendants"), inclusive and each of them, are not known to Plaintiff at this time.  Such Doe Defendants are legally responsible for the events and happenings described herein and for the damages proximately caused thereby.  Plaintiff will seek the leave of the Court to amend this complaint to set forth the true names and capacities of any such Doe Defendants when they have been ascertained.

6.      On information and belief, at all times mentioned herein, Defendants, inclusive and each of them, including without limitation any Doe Defendants, were acting in concert and participation with each other, were joint participants and collaborators in the acts complained of, and were the agents and/or employees of one

another in doing the acts complained of herein, each acting within the course and scope of said agency and/or employment.

## **JURISDICTION AND VENUE**

7.      This Court has jurisdiction of this action pursuant to 17 U.S.C. Sections 101 *et seq.* and 28 U.S.C. Section 1331, 1332 and 1338, *et seq.*  This Court also has supplemental jurisdiction over Plaintiff's claims arising under state law under 28 U.S.C. § 1367, as those claims form part of the same case or controversy.

8.      This Court has personal jurisdiction over Defendant Boardriders, which: (i) does, and solicits, continuous and systematic business in California; (ii) is engaged in a substantial part of the conduct averred herein in California and, by way of such conduct, has injured Plaintiff in California; (iii) derives substantial revenue from goods used, or services rendered, in California; (iv) expects, or reasonably should expect, such infringing conduct to have consequences in California; and (v) derives substantial revenue from interstate commerce.

9.      This Court has personal jurisdiction over Defendant Rowley, which:  (i) does, and solicits, continuous and systematic business in California; (ii) is engaged in a substantial part of the conduct averred herein in California and, by way of such conduct, has injured Plaintiff in California; (iii) derives substantial revenue from goods used, or services rendered, in California; (iv) expects, or reasonably should expect, such infringing conduct to have consequences in California; and (v) derives substantial revenue from interstate commerce.

10.     Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b) and (c) because:  (i) Defendants conduct business in this District—including, but not limited to, in Huntington Beach, California; (ii) Defendant Boardriders maintains its principle place of business in this District; (iii) Defendant Rowley owns and operates numerous stores in this District; (iv) a substantial part of the events giving rise to Plaintiff's claims occurred in this District; and (v) Plaintiff is located, and has been injured, in this District as a result of Defendants' conduct.

# FACTUAL ALLEGATIONS

## A.   Background on Plaintiff and the Color Studies

11.   Plaintiff Marilyn Rondon is a multidisciplinary pop artist, muralist, author and photographer.  In her work, Plaintiff explores color studies, focusing on graphic paintings, printmaking, and the topography of flowers and nature.

12.   For the past eight years, Plaintiff has been responsible for series of paintings, murals and photographs depicting various prints and graphic art emphasizing geometric figures overlaid with foliage and other floral elements (hereinafter referred to as the "Color Studies").

13.   Plaintiff is the owner of United States Federal Copyright Registrations in connection with the Color Studies, specifically Federal Copyright Nos.: VA0002310859;     VA0002310899;     VA0002310902;     VA0002310903; VA0002310904; and VA0002311073.

14.   Additionally, Plaintiff owns the common law copyrights to the Color Studies.

15.   Plaintiff has a loyal fan base and maintains an Instagram account with more than 55,000 followers, which has garnered Plaintiff sales of her artwork both domestically and abroad.

16.   Plaintiff, a Person of Color and someone who immigrated to the United States, created the Color Studies following an abusive relationship as part of her personal healing process.

17.   Plaintiff's artistic work—including various paintings and photographs as well as the Color Studies—has been featured by various articles and on multiple websites, including the Los Angeles Times, CR Fashion Book, Obey, Highsnobiety and Dazed, to name a few, and has been exhibit at art shows around the world, including at Art Basel.

18.   Plaintiff created the Color Studies in or about 2014, which included paintings, photographs, and a mural located at the Hotel Astor in Miami, Florida,

among other things.

19.    Plaintiff's artistic work—including the Color Studies—are of obvious high production value and easily discernable as Plaintiff's work.

**B.    Background on Defendants Boardriders and Rowley**

20.    Plaintiff is informed and believes, and on that basis alleges, that Boardriders—the parent company of the women's sports brand "ROXY"—designs, manufactures and/or distributes clothing, swimwear, and apparel both on the Internet and in brick-and-mortar stores throughout the United States of America and abroad. In 2021, Boardriders enjoyed revenue in excess of $1 Billion.

21.    Plaintiff is informed and believes, and on that basis alleges, that Rowley designs, manufactures and/or distributes clothing, swimwear, and apparel both on the Internet and in brick-and-mortar stores throughout the United States of America and abroad.  In 2021, Rowley enjoyed revenues of approximately $5 Million.

**C.    The Color Studies and Defendants' Access Thereto**

22.    On or about July 21, 2014, Plaintiff posted to Instagram a photograph of herself in front of one of works included in the Color Studies collection of artwork.

23.    In or about December 2014, Plaintiff exhibited the Color Studies at the Art Basel show in Miami, Florida.

24.    On information and belief, the husband of Rowley's founder, president and namesake—Ms. Cynthia Rowley herself ("Ms. Rowley")—attended the Art Basel show in Miami, Florida in or about December 2014.

25.    Ms. Rowley's husband is an influential gallery owner and art dealer who owns and operates the renowned Half Gallery in Manhattan, New York and is a purported fixture of the art scene that can regularly be seen at events across the United States.

26.    Additional photos depicting the Color Studies would later be posted to Plaintiff's various social media platforms as Plaintiff shared the artwork with the public at large.

### D.    <u>Defendants' Infringement</u>

27.    In or about November 2021, Rowley announced a collaborative capsule with Boardriders to produce, market and sell a collection of surf and snow apparel to be sold by and through ROXY—one of the brands owned and operated by Boardriders.

28.    This collaborative capsule was comprised of several items that feature and incorporate many patterns, colors and graphics previously created and memorialized by Plaintiff in the Color Studies—such as, the Roxy x Rowley:  (i) Puffer Jacket; (ii) Snowboard; (iii) Seamless Pullover Sweater; (iv) 1.5mm Back Zip Long Sleeve Springsuit; (v) One Piece Swimsuit; (vi) Elongated Bikini Top; (vii) Cheeky Hi Leg Bottom; and/or (viii) Rosewood Goggles (the "Infringing Items").

29.    By way of example, photographs of certain Infringing Items are set forth below and juxtaposed next to certain excerpts of Plaintiff's Color Studies:

| PLAINTIFF'S COLOR STUDIES | DEFENDANTS' INFRINGING ITEMS |
|---|---|
| **Plaintiff's U.S. Federal Copyright Registration ("Plaintiff's Copyright") No.: VA0002310902**<br> | **(i)   Defendants' Puffer Jacket**<br> |

**Plaintiff's Copyright No.:**

**VA0002311073**

**(ii)  Defendants' Snowboard**



**Plaintiff's Copyright No.:**

**VA0002310859**

**Plaintiff's Copyright No.:**

**VA0002310904**

**(iii)  Defendants' Seamless Sweater**



**Plaintiff's Copyright No.:**

**VA0002310902**

**Plaintiff's Copyright No.:**
**VA0002310902**

**(iv)  Defendants' 1.5mm Back Zip Long Sleeve Springsuit**



**Plaintiff's Copyright No.:**
**VA0002310859**

**Plaintiff's Copyright No.:**
**VA0002310903**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiff's Copyright No.:**

**VA0002311073**

**(v) Defendants' One Piece Swimsuit**



**Plaintiff's Copyright No.:**

**VA0002310902**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiff's Copyright No:**

**VA0002311073**





**Plaintiff's Copyright No.:**

**VA0002310902**



**(vi)  Defendants' Elongated Bikini Top**



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiff's Copyright No:**

**VA0002311073**

**(vii)  Defendants' Cheeky Hi Leg Bottom**



**Plaintiff's Copyright No.:**

**VA0002310902**

| Plaintiff's Copyright No.: VA0002310899 | (viii) Defendants' Rosewood Goggles |
|---|---|
|  |  |
| Plaintiff's Copyright No.: VA0002310902 | |
|  | |

30. In or about July 2022, Plaintiff became aware of the Infringing Items when several of her Instagram followers reached out to congratulate her what her followers believed to be a partnership between Plaintiff and Defendants.

31. Not only had no such partnership been created between Plaintiff and Defendants, Plaintiff had not authorized—and, to this day, has not authorized—the copying, displaying, use and/or distribution of the Color Studies for purposes of the Infringing Items.

32.    By applying Plaintiff's designs to the Infringing Items without her consent, Plaintiff was denied the opportunity to consider whether she desired her work and herself to be associated with Defendants and whether Defendants align with her own views and beliefs.[1]

33.    The artistic arrangement of the Color Studies is unique and non-predictable.  And yet, as clearly visible in side-by-side photos of the items at issue, the Infringing Items are substantially similar, if not duplicative, to the Color Studies.

34.    The average person viewing the art and the clothing items would recognize—and, as mentioned above, has in fact recognized—that the artistic expression in one was copied from the other.

35.    Among other things, the color palette, composition and details right down to the leaves and petals are decisive in showing that Defendants copied Plaintiff's artwork and, in doing so, have committed copyright infringement.

36.    Indeed, as exemplified above and as will be demonstrated at trial, Defendants had access to Plaintiff's copyrighted Color Studies, and Defendants' Infringing Items are substantially similar to Plaintiff's Color Studies.

E.    **Plaintiff Was Substantially Harmed by Defendants' Infringement and Defendants Have Unfairly Benefited**

37.    Plaintiff has suffered substantial financial and emotional damages, among other things, as a result of Defendants' infringement and unauthorized use of the Color Studies.  The amount of Plaintiff's damages are to be determined at trial,

---

[1]    Plaintiff—a survivor, and prior victim, of domestic abuse—would have strongly considered whether to license her artwork to:  (i) a company whose past controversies include sexualizing young women; and/or (ii) a brand with a long history of appropriating art without properly crediting its source.  But due to Defendants' actions, Plaintiff has now had her designs forcibly associated with Defendants without any regard for Plaintiff's personal views, beliefs or preferences.

but exceed $100,000—the minimum license fee Plaintiff would have charged for the commercial use of the Color Studies in connection with the Infringing Items.

38.    Upon information and belief, Defendants' misconduct has proximately caused substantial additional damage to Plaintiff in many separate and independent ways.  By way of example only, and without limitation, Defendants' unauthorized uses of the Color Studies has diminished the value of such property for other uses, including first-use premiums and exclusive uses; and by using, and advertising and promoting its use of, Plaintiff's property without any indication that such uses are licensed or authorized by Plaintiff, Defendants denigrate and disparage Plaintiff and her artwork and photography by conveying to its customers and the general public that Plaintiff's property is without value, and/or is of insignificant or insubstantial value, to Plaintiff's determinant and injury.

39.    Upon information and belief, Defendants' use of the Color Studies drew attention to, and promoted the sales of, its other products.  Plaintiff is informed and believes, and on that basis alleges, that Defendants knowingly and intentionally used the Color Studies as a "door opener" to solicit customers to purchase goods from Defendants' website.

40.    Upon information and belief, Defendants' infringing and unlawful use of the Color Studies has at least partially contributed to, are reasonably related to, and/or bear a legally significant relationship to Defendants' sales of goods and Defendants' profits therefrom.

41.    Furthermore, each and every time an Infringing Item is posted or reposted on the internet or social media–whether on Poshmark, eBay, Pinterest, Instagram or otherwise–copyright infringement occurs, for which Defendants are liable, given the above.

F.    **Members of the Public Show Support for Plaintiff on Social Media**

42.    On or about July 18, 2022, Plaintiff published on her Instagram account a seven-image post featuring side by side photographs of the Color Studies and the

Infringing Items calling attention to the infringement and sharing her opinions as well as the story behind the Color Studies.

43.    As of the date of this Complaint, Plaintiff's post has garnered more than 2,000 likes, 300 comments and 500 shares, largely condemning ROXY and Rowley's underhanded tactics.  Indeed, following Plaintiff's post, many of Plaintiff's followers took to the @ROXY and @CynthiaRowley Instagram accounts to express their uproar only to notice that individual or entity in charge of the @CynthiaRowley Instagram account had been deleting comments left by Plaintiff's followers, as well as 'untagging' the company's Instagram account from Plaintiff's post and other individual's reposts of the Color Studies and Infringing Items.

44.    In or about July 2022, other Instagram accounts with which Plaintiff has no affiliation, influence, or partnership began to cover the incident, such as a famed singer and songwriter with followers in excess of 14 million and an Emmy Award nominated actress with more than 200,000 followers.  The Infringing Items were included in each subsequent post and/or repost covering the incident.

**G.    Plaintiff Unsuccessfully Attempts to Resolve the Issue with Defendants**

45.    On or about July 21, 2022, Plaintiff, by and through counsel, sent written correspondence to Defendants requesting that Defendants cease and desist from the production, marketing and sale of the Infringing Items.

46.    On or about July 26, 2022, counsel for Boardriders responded, in writing, to not only to deny any infringement on behalf of Boardriders, but to threaten to sue Plaintiff for defamation over Plaintiff's opinions that were shared on social media.

47.    Following this initial confrontation, Boardriders changed course and, as a purported goodwill gesture, represented to Plaintiff that the Infringing Items were no longer being sold while this matter was reviewed internally.

48.    However, despite Boardriders' assurances to the contrary, the Infringing Items:  (i) are still available for purchase in Boardriders brick-and-mortar locations as

far as France; (ii) are still available for purchase on multiple websites, including but not limited to www.roxy.com; (iii) are still available for viewing and/or purchase on additional retailers' websites such as www.dickssportinggoods.com and www.REI.com; and/or (iv) can also still be viewed on e-mail and online newsletter search engines and other websites, including but not limited to www.forbes.com, www.wwd.com, www.cynthiarowley.com, and www.roxy.com, among others.

49.    Then, on September 24, 2022, Plaintiff received an unsolicited direct message on Instagram from Ms. Rowley's husband.  In his message, Ms. Rowley's husband confirmed Rowley's prior acts of infringement against renowned artists such as Jack Pierson, Gary Hume and Dough Aitken and communicated to Plaintiff that he "had nothing to do with this Roxy collab" and didn't want Plaintiff to "think [he] had anything to do with this situation".

50.    Indeed, following her July 2022 post on Instagram, many other artists and creatives have contacted Plaintiff to share similar experiences they have had with Rowley in the past.

51.    Despite Plaintiff's efforts, as of the date of this Complaint, Rowley has not responded to Plaintiff's letter or her repeated attempts to engage in a meaningful discussion regarding the Infringing Items.

## FIRST CAUSE OF ACTION
### (Copyright Infringement - 17 U.S.C. §§ 102 and 106, *et seq.*)
### (Direct, Contributory, Vicarious)

52.    Plaintiff incorporates in this cause of action each and every allegation set forth above.

53.    Plaintiff is the sole owner of the copyright in six original works that are fixed in a tangible media of expression—the Color Studies.

54.    Upon information and belief, Defendants have obtained, distributed, and publicly displayed the Color Studies without Plaintiff's consent.

55.    Defendants' acts violate Plaintiff's exclusive rights under the Copyright Act—17 U.S.C. §§ 106 and 501—including, but not limited to, Plaintiff's exclusive rights to produce, reproduce, and distribute copies of her work, to create derivative works, and to publicly display her work.

56.    Alternatively, with actual or constructive knowledge of the infringing activity, Defendants have induced, caused and/or materially contributed to the infringing conduct of others; and/or have failed to exercise their respective rights and abilities to control the conduct of those responsible for infringement, while deriving a financial benefit from the infringement. Accordingly, Defendants have directly, contributorily, and/or vicariously infringed on the Works.

57.    Each infringement of Plaintiff's rights in the Color Studies constitutes a separate and distinct act of infringement.

58.    Defendants' conduct was intentional and willful and undertaken with a conscious disregard of Plaintiff's rights and, therefore, Plaintiff respectfully requests actual damages as well as compensatory damages, including but not limited to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504, and to punitive damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### (Contributory Copyright Infringement )

59.    Plaintiff incorporates in this cause of action each and every allegation set forth above.

60.    As a direct and proximate result of Defendants' infringing actions, numerous additional individuals and entities directly infringed the Color Studies.

61.    Defendant induced, caused, and materially contributed to the infringing acts of encouraging, inducing, allowing and assisting others to reproduce and distribute the Color Studies.

62.    Defendants were aware, or should have had knowledge, of the infringing acts relating to the Color Studies.

63.    The acts and conduct of Defendants, as alleged above, constitute contributory copyright infringement, and, therefore, Plaintiff respectfully requests damages related thereto, in an amount to be proven at trial, including but not limited to attorney's fees.

## THIRD CAUSE OF ACTION
### (Vicarious Copyright Infringement)

64.    Plaintiff incorporates in this cause of action each and every allegation set forth above.

65.    As a direct and proximate result of Defendants' infringing actions, numerous additional individuals and entities directly infringed the Color Studies.

66.    Defendants had the right and ability to control the infringing acts of the individuals who directly infringed upon the Color Studies.

67.    Defendants obtained a direct financial benefit from the infringing activities of the individuals and entities who directly infringed the Color Studies.

68.    The acts and conducts of Defendants, as alleged above, constitute vicarious copyright infringement and, therefore, Plaintiff respectfully requests damages related thereto, in an amount to be proven at trial, including but not limited to attorney's fees.

## FOURTH CAUSE OF ACTION
### (Violation of *California Civil Code* § 980)

69.    Plaintiff incorporates in this cause of action each and every allegation set forth above.

70.    Plaintiff possesses exclusive ownership interests pursuant to *California Civil Code* § 980, and under the common law, in and to the Color Studies and Plaintiff is informed and believes, and on that basis avers, that Defendants have infringed upon Plaintiff's rights therein.

71.    By way of illustration only, Defendants have, without Plaintiff's authorization, consent and/or permission, obtained and distributed the Color Studies.

72.     As a direct and proximate result of Defendants' conduct in violation of Plaintiff's exclusive ownership interests in and to the Color Studies owned pursuant to state law, Defendants have received proceeds and Plaintiff has been damaged in an amount to be proven at trial.

73.     Defendants have engaged in oppression, fraud and/or malice and, by reason thereof,  Plaintiff, in addition to her actual damages, respectfully requests exemplary and punitive damages against Defendants in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION

### (Violation of *California Business and Professions Code* §17200)

74.     Plaintiff incorporates in this cause of action each and every allegation set forth above.

75.     The    foregoing    acts    and    conduct    of    Defendants    constitute misappropriation, conversion, and invasion of Plaintiff's property rights in and to the Color Studies that Plaintiff owns pursuant to state law and which Defendants have infringed, to be identified in discovery.

76.     The    foregoing    acts    and    conduct    of    Defendants    constitute    unfair competition under California Business and Professions Code § 17200 and under the common law.

77.      As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to recover all proceeds and other compensation received or to be received by Defendants arising from their infringements of Plaintiff's Color Studies owned pursuant to state law. Plaintiff requests that the Court order Defendants to render an accounting to ascertain the amount of such profits and compensation. As a direct and proximate result of Defendants' unfair competition, Plaintiff has been damaged and Defendants have been unjustly enriched, in an amount that shall be proven at trial for which damages, restitution, and/or disgorgement is appropriate.

78.   Defendants have engaged in oppression, fraud and/or malice and Plaintiff, in addition to her actual damages is, by reason thereof, respectfully requests exemplary and punitive damages against Defendant.

79.   If necessary, Plaintiff hereby reserves the right to amend this Complaint to add additional claims under state law, or, alternatively, will provide such information pursuant to Fed. R. Civ. P. 26 and/or in discovery.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

a.   For compensatory damages according to proof;

b.   For punitive and exemplary damages in such amount as may be awarded at trial;

c.   For special damages according to proof;

d.   For general damages according to proof;

e.   For lost profits according to proof;

f.   For past and future lost earnings according to proof;

g.   For pre-judgment and post-judgment interest thereon to accrue at the maximum allowable legal rate per annum;

h.   For costs of suit incurred herein, including reasonable attorney's fees; and

i.   For such other and further relief as the Court may deem just and proper.

DATED:  November 14, 2022          Respectfully submitted,


/s/ Saussee Moghoyan
Saussee Moghoyan (CA Bar No. 289764)

*Attorney for Plaintiff*